UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDRICK MARTEZ MARTIN,
#338567,

       Petitioner,                              Civil Action No. 13-CV-15207

vs.                                         HON. BERNARD A. FRIEDMAN

JEFFREY WOODS,

       Respondent.
_____/

## OPINION AND ORDER
### DENYING THE AMENDED HABEAS CORPUS PETITION [9],
### DENYING THE MOTIONS FOR APPOINTMENT OF COUNSEL [17],
### FOR AN EVIDENTIARY HEARING [18], AND ORAL ARGUMENT [19],
### DENYING A CERTIFICATE OF APPEALABILITY, AND
### DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

        Petitioner Fredrick Martez Martin filed a *pro se* amended petition for a writ of habeas corpus, which challenges his convictions for armed robbery, Mich. Comp. Laws § 750.529, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. Petitioner alleges as grounds for relief that his pre-trial identification was unnecessarily suggestive, that the police and prosecutor engaged in misconduct, and that his trial and appellate attorneys were ineffective. None of these claims warrant habeas corpus relief. Accordingly, the Court shall deny the amended petition and the pending motions for appointment of counsel, an evidentiary hearing, and oral argument.

## I. Background

        The charges against petitioner arose from the robbery of an individual at Harding's Market near East Warren Avenue and St. Clair Street in Detroit, Michigan, on August 24, 2009, shortly after 10:00 a.m. The complaining witness, William Freeman, testified at

petitioner's jury trial in Wayne County Circuit Court that a man dressed in black clothing robbed him of $575 at gunpoint after he cashed his paycheck at the market. Following the robbery, the robber instructed him to walk to the corner and go straight down the street.

Later that day, at approximately 2:20 p.m., police officers Gregory Robson, Lawrence Mitchell, and Richard Whitehead heard three gunshots on St. Clair Street near Mack Avenue in Detroit. Shortly afterward, they noticed petitioner riding a bicycle at a fast pace in front of them. One of the officers observed the handle of a gun in petitioner's pants pocket. The officers drove ahead of petitioner and blocked his path. When one of the officers jumped out of the squad car, petitioner hit the door of the vehicle and fell off his bicycle. The gun fell out of petitioner's pocket, and after he admitted that he was on parole and did not have a permit for a concealed weapon, he was arrested. At the police station, the police found narcotics and $555 in cash on petitioner.[1]

Meanwhile, Freeman walked home from Harding's Market. He later returned to the market to obtain a videotape of the robbery. He then went to the police station to report the robbery. One of the officers at the station approached him and stated that he (the officer) had recently arrested a person in the area where the robbery occurred. The officer wondered whether Freeman would be able to identify the person. When Freeman indicated that he would be able to identify the robber, the officer went to the prisoner processing area where petitioner was seated on a bench. The officer asked petitioner to stand up and take a few steps. Freeman identified petitioner as the man who had robbed him. Freeman also identified petitioner at a photographic show-up several days after the robbery, at the preliminary examination, and at trial.

---

[1] As a result of this incident, Petitioner was charged in a separate case with possession with intent to deliver cocaine and heroin, felon in possession of a firearm, and felony-firearm.

Petitioner testified at trial and admitted that he possessed a gun, narcotics, and $555 when he was arrested. He claimed, however, that he carried a gun for protection, that he sold narcotics for a living, and that he had received the money from family and friends for his birthday. He denied committing the armed robbery and maintained that he was on his way to a rehabilitation facility at the time of the robbery. His trial attorney reinforced the alibi defense by arguing to the jury that the person in the videotape resembled petitioner, but was not him.

On October 21, 2010, the jury found petitioner guilty, as charged, of armed robbery, felon in possession of a firearm, and felony firearm. The trial court sentenced petitioner as a habitual offender to twenty to forty years in prison for the robbery conviction, a concurrent term of three to ten years in prison for the felon-in-possession conviction, and a consecutive term of two years for the felony-firearm conviction.

Petitioner appealed his convictions as of right, arguing through counsel that the trial court erred by failing to suppress Freeman's identification of him. In a *pro se* supplemental brief, petitioner argued that the trial court erred by denying his motion to consolidate his two cases, making biased remarks at a pretrial hearing, and shifting the burden of proof in its jury instruction on the alibi defense. He also argued that his trial attorney was ineffective for failing to investigate and call certain witnesses. The Michigan Court of Appeals rejected these claims and affirmed petitioner's convictions in an unpublished, *per curiam* opinion. *See People v. Martin*, No. 302405 (Mich. Ct. App. July 19, 2012). The Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. *See People v. Martin*, 493 Mich. 919; 823 N.W.2d 583 (2012).

On December 12, 2013, petitioner commenced this action by filing a *pro se* habeas corpus petition under 28 U.S.C. § 2254 (docket entry 1) and a motion to stay the federal

proceeding while he pursued additional state remedies (docket entry 3). On February 6, 2014, the Court granted petitioner's motion for a stay and closed this case for administrative purposes (docket entry 6).

Petitioner subsequently returned to state court and filed a motion for relief from judgment which raised issues about his trial and appellate attorneys, the police, the trial judge, the prosecutor, and the cumulative effect of individual errors. The state trial court denied petitioner's motion on the grounds that the court was precluded from adjudicating the claims that petitioner raised on appeal and that petitioner's remaining claims were not supported by the record or an affidavit and lacked merit. The trial court also stated that petitioner's trial and appellate attorneys' representation was not deficient, that petitioner had failed to show "good cause" under Michigan Court Rule 6.508(D)(3) for not having raised the issues earlier, and that there was no error meriting reversal of the jury's verdict. *See People v. Martin*, No. 09-023095-01-FC (Wayne Cty. Cir. Ct. June 6, 2014). Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Martin*, No. 325070 (Mich. Ct. App. June 22, 2015). On June 28, 2016, the Michigan Supreme Court likewise denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D). *See People v. Martin*, 499 Mich. 967; 880 N.W.2d 568 (2016).

On September 15, 2016, petitioner returned to this Court and filed his amended habeas corpus petition (docket entry 9) and a motion to lift the stay (docket entry 8). The amended petition raises five claims regarding the pretrial identification procedure, trial counsel, the police officers' conduct, the prosecutor's conduct, and appellate counsel. The Court granted petitioner's motion to re-open this case (docket entry 10), and the State filed an answer to the

amended petition (docket entry 13). Petitioner filed a reply to the State's answer (docket entry 15), a supplemental petition (docket entry 16), a motion for appointment of counsel (docket entry 17), a motion for an evidentiary hearing (docket entry 18), and a motion for oral argument (docket entry 19).

In his motion for appointment of counsel, petitioner states that he is unable to retain counsel and that he has become overwhelmed with the Court's procedures and requirements. In his motion for an evidentiary hearing, petitioner alleges that the state court prevented him from developing a factual record for his claims. Finally, petitioner alleges that oral argument would assist the Court in deciding the questions presented in his petition.

The State urges the Court to deny the petition and any other relief requested by petitioner. According to the State, petitioner's claims about the police and the prosecutor's conduct are procedurally defaulted, and the state courts' rejection of petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Ordinarily, it is not a jurisdictional matter, *Johnson v. Lee*, 136 S. Ct. 1802, 1806 (2016) (citing *Trest*, 522 U.S. at 89), and "'[j]udicial economy might counsel' bypassing a procedural-default question if the merits 'were easily resolvable against the habeas petitioner.'" *Id.* (quoting *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Here, none of petitioner's claims warrant habeas relief, and the Court finds it more efficient to address the substantive merits of petitioner's claims than to determine whether any of the claims are procedurally defaulted. The Court, therefore, bypasses the procedural-default analysis and proceeds to address petitioner's claims on the merits.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (quoting 28 U.S.C. § 2254(d)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. A state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. The Pretrial Identification

Petitioner alleges that he was denied his right to due process because the police used an unnecessarily suggestive pretrial identification procedure that was conducive to irreparable misidentification. As noted, the initial identification occurred at the police station where petitioner was being held following his arrest for the gun and drug charges. Freeman also identified petitioner at a photographic show-up several days later, at the preliminary examination, and at trial. Petitioner claims that the initial pretrial identification procedure at the police station was unnecessarily suggestive because he was confined in a detention cell, surrounded by police officers, and singled out by an officer. He also points out that no attorney was present.

Petitioner moved to suppress the pretrial identification before trial. At an evidentiary hearing on the motion, Freeman testified that when he went to the police station to report the robbery, an officer approached him and said that he had recently arrested somebody in the area where Freeman had been robbed. The officer wanted to know whether Freeman could identity the person. (10/18/10 Trial Tr., at 17-18.) Freeman was sitting by the front desk at the time, but he could see prisoners sitting on a bench in the lock-up area about forty feet away. *Id.* at 18-20. The officer then went to the lock-up area and asked the person to stand up and walk toward Freeman. *Id.* at 19-21. At that point, Freeman looked at the person and said, "Yes, that's him." *Id.* at 21.

The trial court denied petitioner's motion to suppress the pretrial identification after concluding that, although the pretrial procedure was improper, there was an independent basis for the identification. *Id.* at 45-46. Petitioner raised the issue again on direct appeal. The

Michigan Court of Appeals held that the trial court did not clearly err in finding that the initial identification of petitioner was not unduly suggestive and that there was an independent basis for the suggestive initial identification.

### 1. Clearly Established Federal Law

"The Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability . . . ." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). "Most eyewitness identifications involve some element of suggestion," *id.* at 244, but an identification procedure violates due process of law only if the confrontation was "'unnecessarily suggestive and conducive to irreparable mistaken identification.'" *Neil v. Biggers,* 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). The Supreme Court has held that

> [a]n identification infected by improper police influence . . . is not automatically excluded. Instead, the trial judge must screen the evidence for reliability pretrial. If there is "a very substantial likelihood of irreparable misidentification," *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the judge must disallow presentation of the evidence at trial. But if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth.

*Perry,* 565 U.S. at 231. The Sixth Circuit follows a two-part analysis when evaluating whether an identification procedure was unnecessarily suggestive and conducive to irreparable mistaken identification:

> The court first considers whether the procedure was unduly suggestive. *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). The court must decide if the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection. *Wilson*, 250 F.3d at 397. "The defendant bears the burden of proving this element." *Ledbetter*, 35 F.3d at 1071 (citation omitted). If the procedure was suggestive, the court then determines whether, under the totality of the circumstances, the

identification was nonetheless reliable and therefore admissible. *Wilson*, 250 F.3d at 397 (citation omitted); *Ledbetter*, 35 F.3d at 1071.

*Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009).

### 2. Application

The record in this case indicates that a police officer (1) told Freeman that he had recently arrested someone in the area where the robbery occurred; (2) asked Freeman whether he would be able to identify the person; and (3) then singled out petitioner in the lock-up area of the police station by asking petitioner, and no one else,[2] to stand up and walk a few inches toward Freeman. (10/18/10 Trial Tr., at 17-21, 33.) By focusing Freeman's attention on a single individual who was in police custody and had recently been arrested in the area of the robbery, the police steered Freeman to petitioner and indirectly suggested that petitioner was the man who robbed him. The Court finds that the identification of petitioner at the police station was unnecessarily suggestive.

The next question is whether there was an independent basis for Freeman's pretrial identification of petitioner. The following five factors must be considered when determining whether an identification was reliable despite its suggestiveness: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty at the time of the identification; and (5) the length of time between the crime and the identification. *Biggers*, 409 U.S. at 199-200.

---

[2] Freeman testified that there were two other black men sitting on the bench in the lock-up (10/18/10 Trial Tr., at 20-21), but he made conflicting statements about whether the other men were civilians or policemen. At one point during the evidentiary hearing, he stated that only police officers were around petitioner and that there were no civilians there. *Id*. at 31, 33. Elsewhere, he stated that he did not know whether the two black men sitting on the bench with petitioner were police officers or civilians. He stated that the two men were dressed in civilian clothes and that he "figured they [were] probably prisoners." *Id*. at 35-36.

Freeman testified at the evidentiary hearing that he was robbed outdoors at 10:00 a.m. when it was light and he could see everything. He stood face-to-face with petitioner at a distance of about eighteen inches. (10/18/10 Trial Tr., at 10-11.) His degree of attention apparently was good because he looked at the man when the man demanded his money and wallet. He noticed that the robber walked with a limp, and after the robbery he was able to describe the robber's clothing, build, and gun. *Id.* at 11-13.

Freeman's description of the robber was fairly accurate, although he underestimated petitioner's weight and height and failed to notice petitioner's facial hair. He described petitioner as a light-skinned black male in his mid-twenties with short hair and a clean-shaven face. He stated that petitioner was 160 pounds and five feet, ten inches tall. He also stated that petitioner walked with a limp and that he was wearing a black tee shirt, black pants, and black gym shoes. *Id.* at 25-27. An officer at the police station described petitioner as a black male, 27 years old, six feet and one inch tall, 190 pounds, light complexion, and wearing a crewcut, beard, and mustache. *See* Pet'r's Reply to the State's Answer, Ex.1 (docket entry 15, Page ID 2702).

Freeman was certain of his identification at the police station, and he said at the evidentiary hearing that nothing the police officers did affected his identification. (10/18/10 Trial Tr., at 22.) He identified petitioner because he knew petitioner was the person who had robbed him and he remembered petitioner's face. *Id.* at 22, 34. It appears that the pretrial identification occurred about five or six hours after the robbery.

To summarize, Freeman had a good opportunity to view the robber, his degree of attention during the robbery appears to have been good, his description of petitioner was partially accurate, he was certain of his identification, and the length of time between the crime

and the identification was short. On balance, the Court believes there was an independent basis for Freeman's identification and that his identification was reliable even though the pretrial identification of petitioner at the police station was impermissibly suggestive.

Furthermore, the trial court instructed the jury on how to evaluate eyewitness identification testimony (10/21/10 Trial Tr., at 57-58), and the reliability of Freeman's identification was a matter for the jury to decide. *Perry,* 565 U.S. at 231; *see also United States v. Hill,* 967 F.2d 226, 233 (6th Cir. 1992) (stating that, "[s]ince the identification was sufficiently reliable, the district court properly left it to the jury to decide what weight to ultimately give to the identification").

The state appellate court's adjudication of petitioner's claim was objectively reasonable. It was not contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, petitioner has no right to relief on the basis of his first claim.

**B.  Trial Counsel**

Petitioner alleges next that his trial attorney provided ineffective assistance. Specifically, petitioner asserts that his attorney should have (1) secured the presence of known alibi witnesses, (2) presented an expert witness on eyewitness identification, and (3) attempted to suppress petitioner's custodial statement. Petitioner raised the first two of these sub-claims in his *pro se* brief on direct appeal, and he raised the third sub-claim in his motion for relief from judgment. The Michigan Court of Appeals and the state trial court rejected these claims.

**1.  Clearly Established Federal Law**

To prevail on his ineffective-assistance-of-counsel claim, petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance

prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

### 2. Application

#### a. Failure to Secure Alibi Witnesses

Petitioner alleges that he provided each of his trial attorneys[3] with the names and contact information for witnesses who would testify about his whereabouts at the time of the robbery. According to petitioner, the witnesses included his former fiancee (Corey Pritchett),

---

[3] Petitioner's trial attorney was his third attorney. The other two attorneys withdrew their representation at petitioner's request.

Pritchett's friend "Nicole," and a secretary named "Diane" who worked at the rehabilitation center where petitioner received physical therapy. Petitioner contends that Pritchett and Nicole were at home with him before a transportation service arrived to take him to the rehabilitation center. The Michigan Court of Appeals rejected this claim on the basis that petitioner had failed to show how not calling additional witnesses affected the outcome of the trial and deprived him of a substantial defense.

An attorney's decision not to fully investigate an alibi defense can constitute ineffective assistance of counsel, particularly when an alibi defense is consistent with, and complementary to, counsel's theory of mistaken identification. *Foster v. Wolfenbarger*, 687 F.3d 702, 708-09 (6th Cir. 2012). In the present case, however, trial counsel did present an alibi defense, which included a witness who testified about petitioner's presence at a rehabilitation center on the morning of the robbery. It appears that trial counsel did not produce Pritchett as a witness because there was a breakdown in petitioner's relationship with her she was not as supportive of petitioner as she was earlier. (8/19/10 Pretrial Tr., at 7.)

Further, petitioner has not submitted any affidavits from potential alibi witnesses, stating that they would have been willing and able to testify that petitioner was elsewhere when the crime occurred. As a result, petitioner cannot show prejudice from counsel's decision not to produce Pritchett, Nicole, or the secretary named Diane. *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (concluding that, in the absence of affidavits showing that potential witnesses would have offered specific favorable testimony, the petitioner could not show prejudice from defense counsel's strategic recommendation not to introduce the evidence). The Court agrees with the Michigan Court of Appeals that petitioner has failed to show how failing to call additional witnesses deprived him of a substantial defense.

### b. Failure to Produce an Expert Witness

Petitioner asserts that his trial attorney made an unreasonable decision not to utilize an expert witness on the issue of identification. According to petitioner, expert testimony on the inherent problems associated with eyewitness identification could have supported a defense of mistaken identification and exposed the flaws in Freeman's identification. The Michigan Court of Appeals rejected this claim on direct appeal because petitioner offered no proof that an expert witness would have testified in support of his defense and, therefore, petitioner failed to show that he was deprived of a substantial defense.

There are "dangers inherent in eyewitness identification." *United States v. Wade*, 388 U.S. 218, 235 (1967). Moreover, expert testimony on eyewitness identification is "universally recognized as scientifically valid and of 'aid [to] the trier of fact' for admissibility purposes." *Ferensic v. Birkett*, 501 F.3d 469, 482 (6th Cir. 2007) (quoting *United States v. Smithers*, 212 F.3d 306, 315 (6th Cir. 2000)).

Nevertheless, "a habeas petitioner does not have a constitutional right to the presentation of expert testimony on the reliability of eyewitness identification." *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001) (citing *Moore v. Tate*, 882 F.2d 1107, 1110 (6th Cir. 1989)). Although "in some cases counsel would be deemed ineffective for failing to consult or rely on experts, . . . that formulation is sufficiently general that state courts would have wide latitude in applying it." *Richter*, 562 U.S. at 106. "There are . . . 'countless ways to provide effective assistance in any given case,'" and "[r]are are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id*. (quoting *Strickland*, 466 U.S. at 689).

Petitioner's trial attorney thoroughly questioned Freeman at trial about his identification of petitioner. (10/18/10 Trial Tr., at 25-35.) Trial counsel also argued to the jury that reasonable doubt existed because petitioner was not the person shown in the videotape and still photographs of the robbery. (10/21/10 Trial Tr., at 19-25, 38, 34-35.) Through these tactics, trial counsel was able to challenge the reliability of Freeman's identification testimony. Because his trial strategy was reasonable, his performance satisfied *Strickland's* deferential standard.

Even if the court had concluded that trial counsel's performance was deficient, the deficient performance did not prejudice petitioner because the evidence against petitioner was substantial. In addition to the victim's identification of petitioner, petitioner resembled the suspect shown in the videotape of the robbery, he was dressed like the robber when he was arrested a few hours later, he was riding a bicycle like the one used by the robber to leave the scene of the robbery, he possessed a gun like the one used in the robbery, and he possessed only $20 less than the amount of money taken from the victim.

To conclude, trial counsel's failure to produce a defense expert on eyewitness identification did not constitute deficient performance because he was able to challenge the reliability and accuracy of the identification evidence through other means. Petitioner also was not prejudiced by the failure to use an expert witness because the evidence against petitioner was substantial and an expert witness in all likelihood would not have affected the outcome of the trial.

### c. Failure to Seek Suppression of the Custodial Statement

Petitioner claims that his trial attorney should have attempted to suppress his statement to the police because he was under medical duress when he made the statement.

Petitioner states that he was in a serious car accident eight weeks before the robbery and that he fractured bones in his face, ankle, and leg at the time. As a result, he was given pain medication. Petitioner claims that he re-injured his leg, back, and neck when the police sideswiped him on the day of the robbery and knocked him off his bicycle. He alleges that he requested medical treatment during his custodial interrogation, but the interrogating officer refused to let him go to the hospital until he told the officer what the officer wanted to hear. According to petitioner, he then reluctantly admitted to being in possession of a weapon, drugs, and money because he was unable to endure the pain, and after signing his statement he was taken to the hospital for medical treatment. Petitioner argues that, had counsel tried to suppress his statement, the jury would not have heard his prejudicial admissions regarding drug activity.

The state trial court addressed petitioner's claim on post-conviction review. The state court rejected the claim because, even though no hearing was held on the voluntariness of petitioner's statement to the police, petitioner did not demonstrate what part of his statement was coerced and involuntary or how a hearing on the voluntariness of his confession would have changed the outcome of the case.

The Supreme Court has said that an attorney's "failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). Rather, a defendant has the burden of demonstrating that his underlying claim is meritorious and that there is a reasonable probability the verdict would have been different absent the excludable evidence. *Id.*

The underlying issue is the voluntariness of petitioner's admissions to the police. The test for voluntariness of a confession is whether "the confession [was] the product of an

essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).

> In determining whether a defendant's will was overborne in a particular case, the [Supreme] Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.

*Id.* at 226 (internal citations omitted).

It appears from the record that one of petitioner's initial attorneys filed a motion to suppress petitioner's statement. His trial attorney, however, did not think there was a basis for suppressing petitioner's statement unless petitioner's medical records from the jail supported the contention that petitioner's custodial statement was involuntary or a result of his injury, pain, or any psychological pressure or promise for medication. (4/20/10 Mot. Hr'g, at 4-13.)

It is not clear why trial counsel did not advance the motion to suppress petitioner's statement to the police. However, when petitioner was examined at a local hospital on the day of his arrest, there was only "pain and tenderness to palpation" on his right ankle. He was given an ACE wrap, crutches, and a prescription for Motrin. *See* Pet'r's Reply to the State's Answer, Ex. 3 (docket entry 15, Page ID 2706). The record does not support petitioner's contention that his statement to the police was prompted by excruciating pain and a promise of medical treatment if he told the police officer what he wanted to hear.

The interrogating officer, moreover, testified that he offered petitioner food and juice drinks and that petitioner signed the notification-of-rights form indicating that he had read and understood his rights and was willing to make a statement. (10/20/10 Trial Tr., at 37, 40.)

The interview lasted twenty minutes, and at the conclusion of the interview, petitioner stated that the interrogating officer had treated him fairly. *Id*. at 48, 50. Under the circumstances, trial counsel's failure to file a motion to suppress petitioner's statement did not constitute deficient performance.

Counsel's performance also did not prejudice the defense, because petitioner did not discuss the robbery during his statement to the police. Although he did admit to having a gun and $555 on him at his arrest, this information was cumulative to the arresting police officer's testimony. Further, the trial court instructed the jury not to consider petitioner a bad person or guilty of the charged crimes simply because he was guilty of other bad conduct, including the conduct which led to his arrest. (10/21/10 Trial Tr., at 61.)

### 3. Conclusion on Petitioner's Ineffectiveness Claim

For the reasons stated above, trial counsel's performance was not deficient, and the deficient performance did not prejudice the defense. Even if the Court had concluded otherwise, the state-court decisions on petitioner's various claims about trial counsel were not unreasonable. Therefore, petitioner has no right to relief on his ineffective-assistance-of-counsel claims.

### C. The Police

Petitioner's third claim is that the police deprived him of his right to a fair trial and due process of law through coercive and improper conduct. Petitioner claims that one or more officers (1) intimidated an alibi witness, (2) coerced an involuntary custodial statement from him, and (3) conspired to create a pretextual photographic lineup.

### 1. Witness Intimidation

Petitioner contends that, although his former fiancee was prepared and willing to testify that she and her friend Nicole were with him at the time of the robbery, one of the officers who arrested him intimidated Pritchett outside the courtroom at petitioner's preliminary examination. The officer allegedly admonished Pritchett about her decision to testify on petitioner's behalf and told her that there would be consequences if she did so. Petitioner claims that the officer's intimidating and coercive actions persuaded Pritchett not to testify as an alibi witness at his trial.

Threatening remarks that drive a defense witness off the witness stand deprive a defendant of due process of law under the Fourteenth Amendment. *Webb v. Texas*, 409 U.S. 95, 98 (1972). In other words, "[g]overnment conduct that rises to the level of substantial interference with a witness's 'free and unhampered determination to testify' violates" a defendant's right to due process. *Johnson v. Bell*, 525 F.3d 466, 480 (6th Cir. 2008) (quoting *United States v. Foster,* 128 F.3d 949, 953 (6th Cir. 1997)).

Petitioner's claim, however, lacks merit for the reason given by the state trial court: there is no factual support for the claim that an officer intimidated Pritchett. In fact, as noted above, Pritchett apparently chose not to testify on petitioner's behalf due to a breakdown in her relationship with petitioner. (8/19/10 Mot. Hr'g Tr., at 7.)

### 2. The Custodial Statement

Petitioner states that the police withheld medical treatment after his arrest to induce him to make a confession. He claims that the police promised to send him to the hospital only if he told the officer what he wanted to hear.

The state trial court adjudicated this claim in its order denying petitioner's motion for relief from judgment. The trial court noted that when petitioner signed his statement to the police, he indicated that he was knowingly and voluntarily agreeing to speak with the investigating officer. The trial court also noted that petitioner's medical records did not support his claim that he was suffering from excruciating pain.

The trial court's ruling was objectively reasonable because, as noted above, the hospital record indicates that petitioner's pain was not severe. Additionally, the officer who interrogated petitioner testified that petitioner signed the notification-of-rights form indicating that he was willing to make a statement and that the officer had treated him fairly. (10/20/10 Trial Tr., at 40, 50.) There is no support in the record for petitioner's claim that the police coerced his statement.

### 3. The Photographic Show-Up

Petitioner asserts that the police conducted a pretextual photographic identification a week after Freeman identified him at the police precinct to give credence to the suggestive identification procedure at the precinct and to bolster Freeman's in-court identification of him. There is, however, "nothing per se impermissible about placing the same suspect in two different identification procedures," *United States v. Harris*, 281 F.3d 667, 670 (7th Cir. 2002), and petitioner has not pointed to any unfairness in the photographic array itself.

Freeman, moreover, testified at the state evidentiary hearing that when he viewed the photographic show-up and identified someone, he remembered the person from the robbery and that nothing the officers said to him at the police station affected his identification of the person during the photographic lineup. (10/18/10 Trial Tr., at 24.) Petitioner's claim about the photographic show-up is meritless.

### D.  The Prosecutor

Petitioner contends that the prosecutor deprived him of a fair trial and due process of law during closing arguments by vouching for petitioner's guilt, bolstering the integrity of his investigation, degrading the defense with disparaging remarks, and misleading the jury. Petitioner contends that the prosecutor alluded to his expertise and implied that he had special knowledge of the facts.  Petitioner further alleges that the prosecutor tried to induce the jury to abandon their views of the evidence, and that he intimated that, because petitioner did not or could not present certain people as alibi witnesses, the defense was trying to mislead the jury with lies.

The state trial court concluded on review of this claim that the prosecutor did not improperly comment on the defense.  Instead, according to the trial court, the prosecutor rebutted the alibi defense on the basis of the exhibits and testimony.  The trial court stated that it was entirely proper for the prosecutor to draw reasonable inferences from the evidence, to comment on the credibility of witnesses, and to argue that a witness lied.

#### 1.  Legal Framework

"On habeas review, 'the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015) (quoting *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)), *cert. den. sub nom. Trimble v. Jenkins*, 137 S. Ct. 41 (2016).  Consequently, although prosecutors must "refrain from improper methods calculated to produce a wrongful conviction," *Viereck v. United States*, 318 U.S. 236, 248 (1943), prosecutorial-misconduct

claims are reviewed deferentially in a habeas case, *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

When the issue is the prosecutor's remarks during closing arguments, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012). In *Darden*, the Supreme Court stated that

> it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

*Darden*, 477 U.S. at 181. Prosecutors should refrain from interjecting their personal beliefs into the presentation of their cases, *United States v. Young*, 470 U.S. 1, 8-9 (1985), and from stating a personal opinion about the credibility of witnesses or the defendant's guilt. *United States v. Daniels*, 528 F.2d 705, 709 (6th Cir. 1976). But they may "argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008).

## 2. Application

Petitioner blames the prosecutor for saying that even his attorney was confused by his testimony, but this remark was based on defense counsel's comment on redirect examination of petitioner that petitioner's testimony confused him. (10/20/10 Trial Tr., at 159.) The prosecutor's remarks about petitioner's alibi defense also were proper because he was entitled to highlight inadequacies in the defense and to infer from the evidence that petitioner's alibi was flawed. *Cristini,* 526 F.3d at 901. Even calling petitioner a liar during closing arguments was

acceptable because a prosecutor is entitled to attack a defendant's credibility to the same extent as any other witness. *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999). In this case, moreover, the prosecutor was emphasizing discrepancies between the evidence and petitioner's testimony.

> Prosecutorial vouching is improper because, even though
>
> > [g]overnment attorneys may render disinterested arguments, both offensive and defensive, to persuade the jurors of the case's merit, . . . a prosecutor may not taint the jurors' deliberations with the attorney's own opinions and convictions. *See United States v. Francis,* 170 F.3d 546, 549–51 (6th Cir. 1999).
> > . . . . "[I]mproper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility[,] thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Trujillo,* 376 F.3d 593, 607 (6th Cir. 2004) (internal quotation marks omitted). "Improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *Id.* at 607–08 (internal alterations and quotation marks omitted).

*United States v. Garcia,* 758 F.3d 714, 722-23 (6th Cir. 2014).

Here, the prosecutor did not imply that he personally believed the prosecution witnesses, or that he knew of evidence which was not before the jury. Thus, no improper vouching occurred. Further, the trial court instructed the jury at the beginning of the case and at the close of the proofs that the attorneys' closing arguments were not evidence and that the jurors should base their verdict only on the admissible evidence. (10/19/10 Trial Tr., at 12; 10/21/10 Trial Tr., at 54.) Because jurors are presumed to follow a court's instructions, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001), the trial court's jury instructions likely diffused any prejudice caused by the prosecutor's remarks.

The Court concludes that the prosecutor's comments did not deprive petitioner of a fair trial and that the state trial court's adjudication of petitioner's claim was objectively reasonable. Petitioner, therefore, has no right to relief on the basis of his prosecutorial-misconduct claim.

### E.  Trial and Appellate Counsel

In his fifth and final claim, petitioner alleges that his trial and appellate attorneys were ineffective.

#### 1.  Clearly Established Federal Law

As previously explained, "[c]ounsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are 'so serious' that he no longer functions as 'counsel,' and prejudicial, meaning his errors deprive the defendant of a fair trial." *Maryland v. Kulbicki*, 136 S. Ct. 2, 3 (2015) (citing *Strickland*, 466 U.S. at 687) (emphasis omitted).

Claims of ineffective assistance of appellate counsel "are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). To prevail on his claims about appellate counsel, petitioner "must show that his [appellate] counsel's performance was deficient and that he was prejudiced as a result." *Id.* (citing *Strickland*, 466 U.S. at 687). This requires demonstrating (1) that appellate counsel acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability the defendant would have prevailed on appeal if his attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).

#### 2.  Trial Counsel

Petitioner alleges that trial counsel was ineffective for failing to (1) contact his former fiancee (Ms. Pritchett) to determine why she chose not to testify and (2) secure Pritchett's appearance with a court-ordered subpoena. According to petitioner, if trial counsel had investigated why Pritchett chose not to testify, he would have learned that an officer intimidated her and transformed her from a willing witness into an unwilling witness.

This claim lacks merit for the reasons stated above. First, there is no support for the contention that Pritchett was intimidated by the police. Second, it appears that trial counsel did attempt to contact Pritchett, but that she simply was unwilling to cooperate with petitioner due to a breakdown in their relationship. It is also unlikely that Pritchett would have been an effective defense witness if she had been forced to testify pursuant to a subpoena. Therefore, trial counsel's alleged failure to investigate and secure Pritchett's appearance did not constitute ineffective assistance.

Petitioner also alleges that trial counsel should have made a contemporaneous objection to the prosecutor's conduct. Petitioner argues that if defense counsel had made such an objection, his issues would have been preserved for appellate review and they would not have been analyzed under the stringent "plain error" doctrine. The prosecutor's conduct, however, did not deprive petitioner of a fair trial, and a defense attorney is not ineffective for failing to make a meritless objection to a prosecutor's remarks. *Conley v. Warden Chillicothe Corr. Inst.*, 505 F. App'x 501, 507-08 (6th Cir. 2012).

### 3. Appellate Counsel

Petitioner alleges that his appellate attorney was ineffective for failing to raise meritorious issues that he brought to counsel's attention. The trial court determined on post-conviction review that petitioner was not deprived of effective assistance of appellate counsel

because petitioner had not identified a single issue that should have been raised and was not presented either in the direct appeal or in his *pro se* brief.

The Supreme Court has held that an attorney is not required to raise every non-frivolous claim requested by an indigent defendant if the attorney decides as a matter of professional judgment not to present the claims. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Further, for the reasons stated above, the arguments not raised on direct appeal lack merit. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

## IV. Conclusion and Order

The state courts' rejection of petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts. The state-court decisions also were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly,

IT IS ORDERED that the amended petition for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that the motions for appointment of counsel (docket entry 17), for an evidentiary hearing (docket entry 18), and for oral argument (docket entry 19) are denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied because petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). In addition, reasonable jurists could not disagree with the court's resolution of petitioner's constitutional claims, nor conclude that the issues are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

IT IS FURTHER ORDERED that petitioner may not proceed on appeal *in forma pauperis* because an appeal could not be taken in good faith.

Dated: July 30, 2018                      s/Bernard A. Friedman
Detroit, Michigan                         BERNARD A. FRIEDMAN
                                          SENIOR UNITED STATES DISTRICT JUDGE

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 30, 2018.

                                          s/Johnetta M. Curry-Williams
                                          Case Manager